JUSTIN D. HEIDEMAN (USB #8897)
TRAVIS J. SORENSON (USB #14796)
**HEIDEMAN & ASSOCIATES**
2696 North University Ave., Suite 180
Provo, Utah 84064
Telephone: (801) 472-7742
Fax: (801) 374-1724
Email: jheideman@heidlaw.com
*Attorney for Plaintiffs*

## FEDERAL DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| KIRE KRSTEVSKI, an individual; REBECCA PHILLIPS, an individual; SAMANTHA WILSON, an individual; VIRGINIA BROWN, an individual; GRAHAM and CINDY FALLA, a married couple; KAREN CROWLEY, an individual; RICHARD WILSON, an individual; KEVIN ROSS, an individual; YOULIA MICHAYLOV, an individual; ALLISON ROCHE, an individual; JESU and KARMEL DIAMOY, a couple; KAREN KRUSE, an individual; KEN ORROCK, an individual; ANTHONY PORTELLI, an individual; BEN GREENTREE, an individual; CHRISTINE SCENNA, an individual; DANTE SALVADOR, an individual; EDMUND GOMES, an individual; ELIZABETH BUTLER, an individual; MARK FINN, an individual; MARK RIGDEN, an individual; MICHAEL CIARMA, an individual; OLIVER SONG, and individual; PETER STUDER, an individual; RONALD BRUGMAN, an individual; ROZANNE SCHARAPOW, an individual; TAWANDA JONGWE, an individual; WAYNE | **COMPLAINT**<br><br><br>Case No.:<br><br>Judge: |

PETERSON, an individual; JANELLE
COCKAYNE, an individual; DARRELL
BULL, and individual; IAN SELVARAJOO,
an individual; MARK JONES, an individual;
and BERNARD ELIAS, an individual; FREI,
LLC, a limited liability company; WOJ, LLC,
a limited liability company,

       Plaintiffs,

vs.

EDWARD B. WELSH, an individual;
STACY WELSH, an individual; TERRY
GOERS, an individual; STEPHEN DREDGE,
an individual; T.J. GOERS, an individual;
KRIS THORKELSON, an individual; KEVIN
FLEURY, an individual; DOES 1-10; QB
TECHNOLOGY INTERNATIONAL, INC., a
Utah corporation d/b/a PREMIER
TECHNOLOGY INTERNATIONAL,
GLOBAL STRUCTSURE, and
STRUCTSURE; NEW HARMONY HOMES,
a Utah partnership and defunct limited
liability company; GLOBAL STRUCTSURE
UTAH, INC., a Utah corporation; NEW
HARMONY HOMES DEVELOPMENT,
LLC, a Wyoming limited liability company;
NEW HARMONY HOMES & QB, LLC, a
Wyoming limited liability company; NEW
HARMONY TRANSPORTATION, LLC, a
Wyoming limited liability company; FOX
HOLLOW INVESTMENTS, LLC, a Utah
limited liability company; NEW HARMONY
HOLDINGS, LLC, a Wyoming limited
liability company; T&C HOLDINGS, LLC, a
Wyoming limited liability company; T and C
HOLDINGS, LLC, a Wyoming limited
liability company; NEW HARMONY HOME
SERVICES, LLC, a Wyoming limited
liability company; NEW HARMONY
PROPERTY MANAGEMENT, LLC, a
Wyoming limited liability company; NHH,
LLC, a Wyoming limited liability company;
and ROE CORPORATIONS 11-20,

       Defendants.



Plaintiffs, by and through Counsel Justin D. Heideman of the law firm Heideman &

Associates, hereby complain and allege against Defendants as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      The facts and circumstances giving rise to this lawsuit concern business

transactions related to real property located in the city of Watford, McKenzie County, state of

North Dakota.

2.      All individual Plaintiffs are citizens or subjects of countries other than the United

States of America.

3.      Plaintiff FREI, LLC, is a foreign limited liability company, not registered in the

state of Utah.

4.      Plaintiff WOJ, LLC, is a foreign limited liability company, not registered in the

state of Utah.

5.      Plaintiffs are informed and believe that Defendant EDWARD B. WELSH is, and

at all times relevant herein was, an individual residing in Morgan County in the State of Utah and

doing business in the State of Utah.

6.      Plaintiffs are informed and believe that Defendant STACY WELSH is, and at all

times relevant herein was, a resident of Morgan County in the State of Utah.

7.      Plaintiffs are informed and believe that Defendant TERRY GOERS is, and at all

times relevant herein was, an individual residing in Weber County in the State of Utah.

8.      Plaintiffs are informed and believe that Defendant STEPHEN DREDGE is, and at all times relevant herein was, an individual residing in Morgan County in the State of Utah.

9.      Plaintiffs are informed and believe that Defendant T.J. GOERS is, and at all times relevant herein was, an individual residing in Weber County in the State of Utah.

10.      Plaintiffs are informed and believe that Defendant KRIS THORKELSON is, and at all times relevant herein was, a resident of Canada and was an individual doing business within the State of Utah.

11.      Plaintiffs are informed and believe that Defendant KEVIN FLEURY is, and at all times relevant herein was, a resident of England in the United Kingdom, and was an individual doing business within the State of Utah.

12.      Plaintiffs are informed and believe that Defendant QB TECHNOLOGY INTERNATIONAL, INC., d/b/a/ PREMIER TECHNOLOGY INTERNATIONAL, GLOBAL STRUCTSURE, and STRUCTSURE is, and at all times relevant herein was, a Utah corporation duly organized and existing under the laws of the State of Utah, and doing business in the State of Utah.

13.      Upon information and belief, Defendant NEW HARMONY HOMES ("NEW HARMONY"), is a Utah partnership formed by Defendants, Kris Throkelson, Edward Welsh, Terry Goers, Kevin Fleury, and T.J. Goers. Upon information or belief, the partners of New Harmony Homes intended to form a registered entity under the laws of the state of Utah, and signed an Operating Agreement to that effect. The New Harmony Homes partnership was formed as a result of the partners' failure to file the incorporating documents and register the organization with the Utah Secretary of State's Corporate Commission, or with any other state's corporation commission.

14.     Plaintiffs are informed and believe that Defendant GLOBAL STRUCTSURE

UTAH, INC. is, and at all times relevant herein was, a Utah corporation duly organized and

existing under the laws of the State of Utah, and doing business in the State of Utah.

15.     Upon information and belief, Defendant NEW HARMONY HOMES

DEVELOPMENT, L.L.C., is, and at all times relevant herein was, a Wyoming limited liability

company organized and existing under the laws of the State of Wyoming with sufficient

minimum contacts to subject it to the jurisdiction of this Court.

16.     Upon information and belief, Defendant NEW HARMONY HOMES & QB

L.L.C., is, and at all times relevant herein was, a Wyoming limited liability company organized

and existing under the laws of the State of Wyoming with sufficient minimum contacts to subject

it to the jurisdiction of this Court.

17.     Upon information and belief, Defendant NEW HARMONY

TRANSPORTATION, L.L.C., is, and at all times relevant herein was, a Wyoming limited

liability company organized and existing under the laws of the State of Wyoming with sufficient

minimum contacts to subject it to the jurisdiction of this Court.

18.     Upon information and belief, Defendant FOX HOLLOW INVESTMENTS,

L.L.C., is, and at all times relevant herein was, a Utah limited liability company organized and

existing under the laws of the State of Utah.

19.     Upon information and belief, Defendant NEW HARMONY HOLDINGS, L.L.C.,

is, and at all times relevant herein was, a Wyoming limited liability company organized and

existing under the laws of the State of Wyoming with sufficient minimum contacts to subject it

to the jurisdiction of this Court.

20.     Upon information and belief, Defendant T&C HOLDINGS, L.L.C., is, and at all times relevant herein was, a Wyoming limited liability company organized and existing under the laws of the State of Wyoming with sufficient minimum contacts to subject it to the jurisdiction of this Court.

21.     Upon information and belief, Defendant T and C HOLDINGS, L.L.C., is, and at all times relevant herein was, a Wyoming limited liability company organized and existing under the laws of the State of Wyoming with sufficient minimum contacts to subject it to the jurisdiction of this Court.

22.     Upon information and belief, Defendant NEW HARMONY HOME SERVICES, L.L.C., is, and at all times relevant herein was, a Wyoming limited liability company organized and existing under the laws of the State of Wyoming with sufficient minimum contacts to subject it to the jurisdiction of this Court.

23.     Upon information and belief, Defendant NEW HARMONY PROPERTY MANAGEMENT, L.L.C., is, and at all times relevant herein was, a Wyoming limited liability company organized and existing under the laws of the State of Wyoming with sufficient minimum contacts to subject it to the jurisdiction of this Court.

24.     Upon information and belief, Defendant NHH, L.L.C., is, and at all times relevant herein was, a Wyoming limited liability company organized and existing under the laws of the State of Wyoming with sufficient minimum contacts to subject it to the jurisdiction of this Court.

25.     That the true names and capacities of defendants designated herein as Doe individuals, or Roe Corporations, are presently unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon

allege that each of the Defendants designated herein as DOE or ROE is responsible in some manner for the events and happenings herein referred to and caused injury and damages proximately thereby to the Plaintiffs as alleged herein; that Plaintiffs will ask leave of this Court to amend this Complaint to insert the true names and capacities of said DOE and ROE Defendants, inclusive, when the same have been ascertained by Plaintiffs; together with appropriate charging allegations, and to join such Defendants in this action.

26.     Based on the foregoing and that this case involves an amount in controversy in excess of $75,000.00, jurisdiction is obtained pursuant to 28 U.S.C. § 1332. Additionally, Jurisdiction is proper based upon 28 U.S.C. § 1331 based upon a federal question arising under 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5. Venue is properly obtained in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS
*(Allegations Common to Each Claim for Relief)*

27.     In 1995, Kris Thorkelson ("Thorkelson") co-founded a Canadian corporation called QB Technology Canada Corporation. As part of its business, QB Technology Canada Corporation owned all the rights associated with Canadian patent #2257773 (the "Patent").

28.     The Patent is for "An Improved Synthetic Panel and Method" ("Panel Technology"). Panel Technology could be used to manufacture prefabricated wall assemblies ("Panels"), which could then be shipped directly to a construction site. The Panels could then be assembled rapidly and cheaply into a commercial or residential building.

29.     Thorkelson became the sole controlling shareholder/member of QB Technology Canada Corporation in 2010. As the sole controlling shareholder/member of QB Technology, Thorkelson held all the rights associated with the Patent.

30.     In 2006, Thorkeson began selling licenses to the Patent. While selling these licenses, Thorkelson was introduced to Edward Welsh ("Welsh"). The association between Welsh and Thorkelson continued and in 2010 it became a probably partnership.

31.     In 2010, Welsh approached Thorkelson proposing the formation of a business that would manufacture construction panels using technology from the Patent.

32.     In 2011, an agreement was reached between Welsh and Thorkelson and, as a result, QB Technology International, Inc. ("QB International") was formed as a Utah corporation.

33.     In 2011, Thorkelson moved to Utah and opened a bank account with the Mountain Green Branch of 1st Bank ("1st Bank"). Both Thorkelson and Welsh had signing authority on the account.

34.     Thereafter, Thorkelson transferred over $100,000.00 from his Canada account into Welshs and Thorkelson's account at 1st Bank to help fund their business venture.

35.      Welsh and Thorkelson agreed to solicit investors to generate the necessary funds for QB International.

36.     To solicit investors for QB International, Welsh and Thorkelson formed a new company called New Harmony Homes ("NEW HARMONY").

37.     NEW HARMONY's original business plan called for using Panel Technology to construct housing for oil workers in the North Dakota oil fields.

38.     Panels were to be manufactured at a Utah manufacturing facility, and then shipped to North Dakota to build housing for oil field workers.

39.     NEW HARMONY believed building housing in North Dakota would be a profitable venture because a recent oil boom in North Dakota had left certain areas of the state dramatically short on housing.

40.     Subsequently, Welsh recommended that Defendant Terry Goers ("Goers") be added as a member of NEW HARMONY. Based on Welsh's recommendations and Goers' apparent manufacturing experience, Thorkelson agreed.

41.     Goers acted in all ways as a member of NEW HARMONY, however, Goer's ownership interest in NEW HARMONY was held by his son, T.J. Goers.

42.     In or about March of 2011, Defendant Kevin Fleury ("Fleury") was added as a member in NEW HARMONY. Fleury is a financial broker in London, England.

43.     Shortly thereafter, all four members of NEW HARMONY, Thorkelson, Welsh, Goers, and Fleury, signed a NEW HARMONY Operating Agreement at Welsh's residence either in their individual capacity, or in their capacity as representatives of other entities, such as QB International.

44.     Upon information or belief, NEW HARMONY was never properly formed as a corporation or other registered entity because no incorporating documents were ever filed with the state of Utah, or with any other state.

45.     At some point, Stephen Dredge ("Dredge") was added as a partner in NEW HARMONY. Dredge was given signing authority for NEW HARMONY because Thorkelson and Fleury were not U.S. citizens, and Welsh and Goers claimed to have poor credit.

46.     In 2012, QB International and NEW HARMONY, through Welsh, Thorkelson, Fleury, Goers, and Dredge began soliciting investments from investors living outside the United States, for investments to fund a housing project ("Dakota Project") in Watford, North Dakota.

47.     In 2012, QB International and NEW HARMONY, through Welsh, Thorkelson, Fleury, Goers, and/or Dredge, solicited the NEW HARMONY Dakota Project investment opportunity to Plaintiffs through a broker in Australia named Jason Simpson and Cash Flow Gold, LLC.

48.     QB International and NEW HARMONY proposed the following structure to investors, including Plaintiffs: Each investor would finance the building of one or more rooms in the Dakota Project, and share the rental revenue with NEW HARMONY once building was complete.

49.     QB International and NEW HARMONY referred to these rooms as units ("Units").

50.     QB International and NEW HARMONY provided Plaintiffs, and other investors, with a reservation form ("Reservation Form"), which described a purchase price of $47,000.00 per Unit, to be paid to NEW HARMONY in stages.

51.     According to the Reservation Form, Investors were to pay 35% of the purchase price on completion of the Purchase Contract ("Stage 1"), the next 35% when QB International completed the Panels at the factory ("Stage 2"), and the final 30% when NEW HARMONY delivered a "rent ready" property to each Plaintiff ("Stage 3")(collectively, the "Stages").

52.     Pursuant to the Plaintiffs' Reservation made with QB International and NEW HARMONY, each Plaintiff invested money in NEW HARMONY by purchasing at least one individual housing unit ("Unit") that was part of the Dakota Project, with some Plaintiffs purchasing more than one Unit.

53.     Pursuant to the Plaintiffs' Reservation made with QB International and NEW HARMONY, each Plaintiff signed at least one Real Estate Purchase and Sales Agreement ("REPC") for the relevant Unit or Units purchased by Plaintiff from NEW HARMONY.

54.     Pursuant to the REPCs, NEW HARMONY would rent the Units and share the rental proceeds with the Plaintiffs who purchased the Units once the Dakota Project was complete.

55.     The REPCs described a purchase price of $47,000.00, and conveyed to each Plaintiff a Unit and a 1/60th undivided interest in a certain described land in North Dakota on which the Units were to be built, which certain land is legally described in the REPCs as:

> All that tract of land lying and being in Land lot 1 Westside 1 acre of That part of the E1/2SW1/4, Section 19, Township 149 North, Range 98 West of the Fifth Principle Meridian, McKenzie County, North Dakota described as: Commencing at the South Quarter corner of said section 19 as the Point of Commencement, then N 0deg05'38"W, along the east line of said Southwest Quarter, a distance of 2308.10 feet to the point of beginning, then N89deg59'05"W a distance of 657.67 approx feet, then N0deg 329.79 feet, than S89deg58'56"E a distance of 131.53 feet, than S0deg05'38"E 329.79'. The above described bearing are based on assumed N89deg59'56"E on and along the south line of the southwest on quarter (SW1/4) of said section. All plants, trees, and shrubbery now a part thereof, together with all the improvements thereon, and all appurtenances thereto, all being hereinafter collectively referred to as the "Property". The full legal description of said Property is the same as is recorded with the Clerk of the Superior Court of the County in which the Property is located and is made a part of this Agreement by reference.

56.     The REPCs also stated that the purchase included a "Modular Motel Room", which is referred to herein as a "Unit".

57.     The REPCs offered Plaintiffs the opportunity to enroll in something called "The New Harmony Property Management LLC Rental Guarantee Program."

58.     After signing the REPCs, each Plaintiff wired their money to Stowell & Crayk, a Utah law firm that acted as escrow agent.

59.     In total, investors, including but not limited to Plaintiffs, deposited $8.5 million with Stowell & Crayk.

60.     Plaintiff's escrow funds were supposed to be used to complete the Dakota Project.

61.     Plaintiffs understood they were to release their money from the escrow agent as the Dakota Project progressed. The first 35% was due upon signing the Agreements (Stage 1), the next 35% was due when the Panels for the Unit were completed (Stage 2), and the final 30% was due when the applicable Unit was ready to rent (Stage 3).

62.     On or about March 9, 2012, the first Stage 1 payments from investors were released by Stowell & Crayk to NEW HARMONY.

63.     In 2012, QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, and/or Dredge, created several alternative business entities including, but not necessarily limited to: QB Technology International dba Premier Technology International, Global StructSure, and StructSure; Global Structsure Utah; New Harmony Homes Development; New Harmony Homes & QB; New Harmony Transportation; New Harmony Holdings; T&C Holdings; T and C Holdings; Fox Hollow Investments; and, upon information and belief, other Roe Corporations (These companies, together with NEW HARMONY, referred to herein as the "Corporate Defendants").

64.     Upon information and belief, thereafter, Defendants, Welsh, Fleury, Thorkelson, Goers, and/or Dredge, transferred Plaintiffs' investment funds held by NEW HARMONY into the Corporate Defendants.

65.     In or about March of 2012, Corporate Defendants opened a manufacturing facility in Ogden, Utah.

66.     Upon information and belief, Defendants, Welsh, Fleury, Thorkelson, Goers, and/or Dredge, used NEW HARMONY investor monies to fund operations of these unrelated side-businesses for their own personal gain, and to distribute money to themselves, and their family members.

67.     Upon information and belief, Defendants, Welsh, Fleury, Thorkelson, Goers, and/or Dredge, filtered money out of NEW HARMONY to friends and family members by paying their friends and family members salaries from Corporate Defendants, when in fact, they did not add any value to NEW HARMONY.

68.     Upon information and belief, during this time, Welsh wrote several checks to himself and Stacy Welsh, Welsh's wife, for no apparent reason other than to enrich Stacy Welsh and himself. Welsh purchased, among other things, personal vehicles for himself and his family with investor funds.

69.     Upon information and belief, Welsh diverted NEW HARMONY funds to pay down the mortgage on his personal residence valued at approximately $800,000.00. Welsh's home was previously in foreclosure. However, upon information and belief, Welsh paid off the Home and cured the foreclosure during this time.

70.     Over the next few years, Plaintiffs realized there were significant problems with the Dakota Project. Construction was significantly delayed, and NEW HARMONY made a variety of excuses for the delay and promises for full completion, which never came to fruition.

71.     NEW HARMONY solicited Plaintiffs to release funds from escrow with promises that the release would hasten the completion of the Dakota Project.

72.     NEW HARMONY assured Plaintiffs all necessary permits had been obtained, and that nothing was standing in the way of the Dakota Project, when in fact, the project had not been fully cleared.

73.      None of the Plaintiffs have received any return on or reimbursement of their investments.

74.     Plaintiffs have subsequently learned that the delays with the Dakota Project were caused by NEW HARMONY's failure to properly construct the Dakota Project.

75.     Upon information and belief, NEW HARMONY agents consistently refused to seek appropriate permits and inspections to lawfully construct the Dakota Project.

76.     Much of the construction actually performed on the Dakota Project was inadequate. For example, the water and sewer systems were both unable to adequately service the Units.

77.     Upon information and belief, the reason the Dakota Project was poorly constructed and incomplete was because Welsh, Thorkelson, Fleury, Goers and/or Dredge, diverted money from NEW HARMONY, and therefore, NEW HARMONY did not have the adequate capital to properly complete the Dakota Project.

78.     Upon information and belief, Defendants, Thorkelson and Fleury, have plead in other court proceedings that they knew as early as June, 2012, that NEW HARMONY was missing millions of dollars of investor funds that could not be accounted for, and which funds were supposed to be used to fund the Dakota Project.

79.     Many investors, including Plaintiffs, invested in the project after June 2012.

80.     Despite apparently knowing about the millions of missing dollars from NEW HARMONY, Defendants, including but not limited to Thorkelson and Fleury, did not disclose this information to potential new investors, including Plaintiffs.

81.     Upon information and belief, NEW HARMONY continued to misappropriate funds Plaintiffs invested for the Dakota project, even after Thorkelson and Fleury became aware that millions of dollars of funds were missing.

82.     Specifically, NEW HARMONY flew Welsh around the world with, Plaintiffs', and other investors', funds in an effort to secure contracts to construct buildings with the Panel Technology, and other various unrelated projects.

83.     Upon information and belief, NEW HARMONY used the Plaintiffs', and other investors', funds meant for the Dakota Project to fly Welsh to Jamaica at least twice for the purpose of soliciting the Jamaican government to construct certain public housing projects with Panel Technology.

84.     Upon information and belief, NEW HARMONY used the Plaintiffs', and other investors', funds meant for the Dakota Project to fly Welsh to Dubai and the Dominican Republic for the purpose of promoting the Panel Technology, and other various unrelated projects.

85.     Upon information and belief, NEW HARMONY used the Plaintiffs', and other investors', funds meant for the Dakota Project to fly potential partners from around the world to the NEW HARMONY headquarters in Utah to promoter other various other unrelated projects.

86.     Upon information and belief, NEW HARMONY used hundreds of thousands of dollars of Plaintiffs', and other investors', invested funds meant for the Dakota Project to start and buy equipment for a trucking company.

87.     Upon information and belief, NEW HARMONY used a substantial sum of the investors' money to operate a metal fabrication business from the NEW HARMONY or QB International production facility.

88.     The abuse was not limited to Welsh, as Thorkelson and Fleury have previously claimed. For example, NEW HARMONY's bank records show that on January 19, 2013, a ban card ending in 8914 held by Fleury was used for purchases at Brighton Ski Resort totaling over $200.00.

89.     NEW HARMONY's records show that Fleury's bank card ending in 8914was used in Dubai in November of 2012.

90.     NEW HARMONY's records show the Fleury's bank card ending in 8914 was used for a trip to Las Vegas, Nevada in April 2013.

91.     NEW HARMONY's records show the Fleury's bank card ending in 8914 was used for a trip to Florida in April 2013.

92.     During this period, NEW HARMONY demanded the early release of the Plaintiffs' escrow money for Stage 2 and Stage 3 to be released despite the projects incompletion.

93.     NEW HARMONY threatened the Plaintiffs with an action for breach of contract should they fail to comply.

94.     Upon information and belief, over $2.1 million dollars of Plaintiffs' funds held in escrow were released to NEW HARMONY, which money was meant to be used by NEW HARMONY to complete the Dakota Project.

95.    The Dakota Project remains incomplete, despite the large sums of money invested by Plaintiffs, and other investors, which funds were plentiful and sufficient for the projection's completion, if Defendants had not diverted funds from NEW HARMONY.

96.    In addition to not completing the Dakota Project, Defendants have sold and transferred the land upon which the Dakota Project was to be built to a company call DFH Watford, LLC, a Delaware limited liability company, and Plaintiffs' received nothing for the sale of the land or any reimbursement for their investment.

97.    At no time did any of the Defendants file a securities registration with either the federal Securities and Exchange Commission or the Utah State Division of Securities.

98.    On December 13, 2013, Thorkelson and Fleury filed suit against Welsh, Stacy Welsh, Goers, Dredge, T.J. Goers, and Corporate Defendants in the Second Judicial District Court in and for Weber County State of Utah. Thorkelson and Fleury brought fifteen causes of action including: Breach of Fiduciary Duty, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Conversion, Unjust Enrichment, Inspection of Records (U.C. § 48-2c-113), Dissolution (U.C. § 48-2c-1210), Wrongful Termination, Accounting, Appointment of Receiver (U.C. § 48-2c-1212; URCP Rule 66), Injunctive Relief, Alter Ego, Direct Cause of Action, and Civil Conspiracy. See *Thorkelson v. Welsh*, Case No. 130907878.

99.    On or about June 10, 2014, additional plaintiffs, consisting of a group of investors from England, joined Thorkelson and Fleury in the Weber County District Court case, and the complaint in Case No. 130907878 was amended to include claims for Alter Ego, Federal Securities Fraud (15 U.S.C. § 78j(b) and Rule 10b-5), and State Securities Fraud (U.C. § 61-1-1 et seq.).

100.    On May 15, 2015, the Second Judicial District Court in and for Weber County found at summary judgment that Welsh and the Corporate Defendants violated state securities laws by failing to register securities in violation of U.C. § 61-1-1 et seq.

101.    On June 9, 2015, in Case No. 130907878,  the Second Judicial District Court in and for Weber County State of Utah entered judgment against the Corporate Defendants and Welsh for treble damages in the amount of $14,659,549.08.

102.    Plaintiffs in the present case were not parties in the *Thorkelson v. Welsh*, Case No. 130907878.

## FIRST CAUSE OF ACTION
*(Breach of Contract)*
(Against QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge)

103.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

104.    Plaintiffs entered into valid contracts with Defendant QB International and NEW HARMONY for the purchase of an undivided interest in the Dakota Project.

105.    Plaintiffs provided good and valuable consideration in the form of nearly $47,000.00 per Unit paid to NEW HARMONY in return for the obligations set forth in the Agreement.

106.    Plaintiffs substantially performed all of their obligations set forth in the Agreement.

107.    NEW HARMONY breached the terms of the Agreement by: (1) failing to complete the Dakota Project, and (2) failing to fully disclose material information in order to make statements that were purposefully misleading.

108.    As a result of QB International and NEW HARMONY's actions, Plaintiffs have incurred damages, including loss of investment money, and loss of future rental income.

109.    QB International, NEW HARMONY, and Defendants Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, as partners of New Harmony, are individually jointly and severally liable to Plaintiffs for damages resulting from QB International and NEW HARMONY's breach.

110.    Further, Plaintiffs have been harmed in an amount to be proven at trial, but not less than $2,100,000.00 plus attorney's fees and costs.

## SECOND CAUSE OF ACTION
*(Breach of Implied Covenant of Good Faith and Fair Dealing)*
(Against QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge)

111.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

112.    Pursuant to Utah law, every contract carries with it an implied covenant of good faith and fair dealing. This covenant requires the parties to perform – in good faith – the obligations required by their agreement.

113.    As explained above, Plaintiffs, QB International and/or NEW HARMONY entered into valid contracts for the purchase of Unit interests in the Dakota Project.

114.    Plaintiffs performed all duties required of them in good faith pursuant to the terms of the contract, and placed QB International and/or NEW HARMONY in a position to realize the benefit and fruits of this contract.

115.    QB International and/or NEW HARMONY breached the terms of the contract by: (1) failing to complete the Dakota Project, and (2) failing to fully disclose material information in order to make statements that were purposefully misleading.

116.    Defendants, QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, breached their duty of good faith and fair dealing by otherwise acting in a manner that deprived Plaintiffs of the benefit of their bargain as described herein, and by wrongfully diverting funds, invested by Plaintiffs for the purpose of completing the Dakota Project, to further Defendants' own interests in detriment to Plaintiffs' interest.

117.    As a result of Defendants', QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge's, actions, Plaintiffs have incurred damages, including loss of investment money, and loss of future rental income.

118.    Plaintiffs have been harmed in an amount to be proven at trial but not less than $2,100,000.00 plus attorney's fees and costs.

119.    QB International, NEW HARMONY, and Defendants Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, as partners of New Harmony, are individually jointly and severally liable to Plaintiffs for damages resulting from QB International and NEW HARMONY's breach.

### THIRD CAUSE OF ACTION
(*Fraud/Misrepresentation*)

(Against QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge)

120.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

121.    At the time the Agreement was entered into, and the time period immediately leading up to the execution of the Agreement, QB International and/or NEW HARMONY represented to Plaintiffs that the Dakota Project had received approval for the project in its entirety from the McKenzie County officials.

122.     At the time the Agreement was entered into, and the time period immediately leading up to the execution of the Agreement, QB International and/or NEW HARMONY represented to Plaintiffs that the Dakota Project investment funds would be used to construct the Dakota Project.

123.     At the time the Agreement was entered into, and the time period immediately leading up to the execution of the Agreement, QB International and/or NEW HARMONY represented to Plaintiffs that that the Dakota Project would have a completion date of July 1, 2013.

124.     NEW HARMONY represented to Plaintiffs that the Dakota Project would yield rental incomes and a property interests.

125.     These representations were material to the transaction and directly affected Plaintiffs' decision to purchase unit Interests.

126.     At the time these representations were made, QB International and/or NEW HARMONY knew, or is deemed to have known, that these representations were false and misleading.

127.     QB International and/or NEW HARMONY made these representations to Plaintiffs after June 2012 when at least two of NEW HARMONY's partners knew that millions of dollars that had been previously invested by other investors were unaccounted for and missing.

128.     QB International and/or NEW HARMONY made these representations for the purpose of inducing Plaintiffs to act upon said representations and enter into the REPCs.

129.     Plaintiffs, acting reasonably and in ignorance of the falsity of these representations, relied on these representations and were induced to act upon them.

130.     As a result of this reliance, Plaintiffs entered into the Agreement and tendered payment of $47,000.00 per Unit to NEW HARMONY.

131.     Thereafter, after NEW HARMONY had knowledge that not all of the necessary permits had been obtained, and that the Dakota Project was not completely cleared, QB International and/or NEW HARMONY represented to Plaintiffs that the Dakota Project had obtained all necessary permits and that with the release of further funds from escrow, the project would be completed when in fact the project was not completely cleared to be completed.

132.     QB International and/or NEW HARMONY made these misrepresentations knowing Plaintiffs would not release more funds unless they knew the Dakota Project was making headway.

133.     Plaintiffs reasonably relied on misrepresentations made by QB International and/or NEW HARMONY in entering into REPC contracts, and placing $47,000.00 in escrow for each Unit.

134.     Plaintiffs reasonably relied on QB International and/or NEW HARMONY's misrepresentations regarding NEW HARMONY having obtained all the necessary permits and needing additional funds to complete the project, and thereafter released more funds reasonably believing those funds would hasten the completion of the Dakota Project.

135.     QB International and/or NEW HARMONY made these representations for the purpose of inducing Plaintiffs to release additional funds from escrow.

136.     Plaintiffs, acting reasonably and in ignorance of the falsity of these representations, relied on these representations and were induced to act upon them.

137.     As a result of Defendants' actions, Plaintiffs have incurred damages, including loss of investment money, and loss of future rental income.

138.    Plaintiffs have been damaged in an amount to be proven at trial, but not less than $2,100,000.00 plus attorney's fees and costs.

139.    QB International, NEW HARMONY, and Defendants Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, as partners of New Harmony, are individually jointly and severally liable to Plaintiffs for damages resulting from QB International and NEW HARMONY's fraudulent misrepresentations.

### FOURTH CAUSE OF ACTION
*(Fraudulent Non-Disclosure)*
(Against QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge)

140.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

141.    Among other things, QB International and/or NEW HARMONY represented to Plaintiffs that the Dakota Project had been approved in its entirety, and that production was ready to begin.

142.    QB International and/or NEW HARMONY disseminated this information to Plaintiff knowing the Dakota Project had not been approved in its entirety.

143.    As of July 10, 2013, approval for the Dakota Project was granted for only 40 units, and there was no assurance from McKenzie County officials that additional approvals would be granted.

144.    As of the date of this filing, the Dakota Project is still unfinished and appears to be abandoned.

145.    QB International and NEW HARMONY had a duty to fully inform Plaintiffs of the status of the Dakota Project, and to disclose all material adverse facts regarding the Dakota Project.

146.    QB International and NEW HARMONY failed to disclose that the Dakota Project was not entirely approved, and other material facts, in an effort to secure the execution of the REPCs, and obtain $47,000.00 per Unit payments from Plaintiffs.

147.    Plaintiffs, acting reasonably, relied on the information disclosed by QB International and/or NEW HARMONY as being all of the material information relevant to entering into the REPCs.

148.    Relying on the completeness of QB International and/or NEW HARMONY's disclosures, Plaintiffs entered into the REPC's and tendered $47,000.00 payments for each Unit to NEW HARMONY.

149.    As a result of Defendants' actions, Plaintiffs have incurred damages, including loss of investment money, and loss of future rental income.

150.    Further, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $2,100,000.00 plus attorney's fees and costs.

151.    QB International, NEW HARMONY, and Defendants Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, as partners of New Harmony, are individually jointly and severally liable to Plaintiffs for damages resulting from QB International and NEW HARMONY's fraudulent nondisclosure.

### FIFTH CAUSE OF ACTION
(Negligent Misrepresentation)
(Against QB International, NEW HARMONY, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge)

152.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

153.    At the time the Agreement was entered into, and the time period immediately leading up to the execution of the REPCs, QB International and/or NEW HARMONY

represented to Plaintiffs that the Dakota Project had received approval for the project in its entirety from the McKenzie County officials.

154.    At the time the Agreement was entered into, and the time period immediately leading up to the execution of the REPCs, QB International and/or NEW HARMONY represented to Plaintiffs that the Dakota Project investment funds would be used to construct the project.

155.    At the time the Agreement was entered into, and the time period immediately leading up to the execution of the Agreement, QB International and/or NEW HARMONY represented to Plaintiffs that that the Dakota Project would have a completion date of July 1, 2013.

156.    These representations were material to the transaction and directly affected Plaintiffs' decision to purchase Unit Interests.

157.    QB International and/or NEW HARMONY were in a better position than Plaintiffs to know of the truthfulness or falsity of the representations made to Plaintiffs.

158.    QB International and/or NEW HARMONY made these representations for the purpose of inducing Plaintiffs to act upon said representations and enter into the Agreement.

159.    Plaintiffs, acting reasonably and in ignorance of the falsity of these representations, relied on these representations and were induced to act upon them.

160.    As a result of this reliance, Plaintiffs entered into the Agreements and tendered payment of nearly $50,000.00 per Unit interest to NEW HARMONY.

161.    As a result of Defendants' actions, Plaintiffs have incurred damages, including loss of investment money, loss of future rental income, and the goodwill attached to Plaintiffs' names for other business ventures.

162.    Plaintiffs have been harmed as a result of this fraudulent behavior in an amount to be proven at trial, but not less than $2,100,000.00 plus attorney's fees and costs.

163.    QB International, NEW HARMONY, and Defendants Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, as partners of New Harmony, are individually jointly and severally liable to Plaintiffs for damages resulting from QB International and NEW HARMONY's negligent misrepresentation.

## SIXTH CAUSE OF ACTION
*(Conversion)*
(Specific as to all Defendants)

164.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

165.    All Defendants exercised wrongful dominion over Plaintiffs' funds in a manner inconsistent with and in defiance of Plaintiffs' rights in the property.

166.    NEW HARMONY and its partners, Welsh, Thorkelson, Fleury, Goers, T.J. Goers, and Dredge, used Corporate Defendants and all other Defendants to exercise wrongful dominion and control over the property at the expense of Plaintiffs as related above.

167.    As a result of Defendants' actions, Plaintiffs have incurred damages, including loss of investment money, and loss of future rental income.

168.    Plaintiffs have been harmed as a result of this fraudulent behavior in an amount to be proven at trial, but not less than $2,100,000.00 plus attorney's fees and costs.

## SEVENTH CAUSE OF ACTION
(Civil Conspiracy)
(Against all Defendants)

169.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

170.     Under Utah law, to prove a civil conspiracy a plaintiff must show the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof. *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah App. 1987).

171.     Defendants entered into a combination of two or more persons to defraud Plaintiffs and to induce them to invest $47,000.00 per Unit.

172.     Defendants induced Plaintiffs to invest $47,000.000 knowing the money would be wrongfully used to fund Defendants' other business ventures, and for Defendants' other personal uses.

173.     Defendants had an agreement to defraud Plaintiffs as described above.

174.     Defendants committed one or more unlawful acts, overt acts in inducing Plaintiffs to invest $47,000.00, including but not limited to, committing fraud against Plaintiffs, converting Plaintiffs' investment funds for use in other business, and for personal use as described above, and by violating federal and state securities laws as described below.

175.     As a result of Defendants' civil conspiracy, Plaintiffs have incurred damages, including loss of investment money, and loss of future rental income.

176.     Plaintiffs have been harmed as a result of Defendants civil conspiracy in an amount to be proven at trial, but not less than $2,100,000.00 plus attorney's fees and costs.

## EIGHTH CAUSE OF ACTION
*(Unjust Enrichment)*
(Specific as to all Defendants)

177.     Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

178.    The transfer of Plaintiffs' funds by NEW HARMONY to Corporate Defendants and all other Defendants for unrelated side businesses and personal use has unjustly enriched all Defendants, and it would be inequitable for Defendants to retain these benefits.

179.    Plaintiffs have been impoverished by these instances of unjust enrichment by Defendants by being deprived of their investment money and any benefits Plaintiffs were entitled to under the terms of their original agreements.

180.    There is no justification for the enrichment of Defendants nor the impoverishment of Plaintiff, and no other adequate remedy exists by law.

181.    As a result of Defendants' actions, Plaintiffs have incurred damages, including loss of investment money, loss of future rental income, and the goodwill attached to Plaintiffs' names for other business ventures.

182.    Further, Plaintiffs are entitled to the equitable remedy of restitution of not less than $2,100,000.00 plus attorney's fees and costs.

## NINTH CAUSE OF ACTION
(Alter Ego)
(Specific as to all Defendants)

183.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

184.    Defendants, Welsh, Thorkelson, Fleury, Goers, and Dredge, have used NEW HARMONY and Corporate Defendants as their alter egos in perpetrating wrongful and illegal acts.

185.    Upon information and belief, mismanagement and exploitation of the NEW HARMONY and Corporate Defendants by Welsh, Thorkelson, Fleury, Goers, and Dredge have rendered NEW HARMONY unable to meet normal operating expenses. Additionally,

undercapitalization and plundering of NEW HARMONY has left NEW HARMONY unable to meet contractual obligations due Plaintiffs, including the completion of the Dakota Project.

186.    Defendants, Welsh, Thorkelson, Fleury, Goers, and Dredge, have repeatedly failed to observe corporate formalities. A proper shareholders meeting has never been called for any of the entities. A proper director's meeting has never been called for any of the entities. Upon information and belief, NEW HARMONY and Corporate Defendants have failed to pay any dividends to investors.

187.    Defendants, Welsh, Thorkelson, Fleury, Goers, and Dredge, have siphoned the assets of NEW HARMONY and used those assets for their own personal use. Several million dollars invested by Plaintiffs are unaccounted for.

188.    Defendants, Welsh, Thorkelson, Fleury, Goers, and Dredge, have used NEW HARMONY to acquire investor monies for personal use, and to fund the Corporate Defendants. Several million dollars invested by Plaintiffs are unaccounted for.

189.    As a result of Defendants, Welsh, Thorkelson, Fleury, Goers, and Dredge using NEW HARMONY and the Corporate Defendants as their alter ego, Plaintiffs have suffered damages in an amount no less than $2,100,000.00, or other greater amount to be proven at trial.

190.    Defendants, Welsh, Thorkelson, Fleury, Goers, and Dredge are individually liable jointly and severally for damages suffered by Plaintiffs.

## TENTH CAUSE OF ACTION
(Securities Fraud, Violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5)
(Against all Defendants)

191.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

192.    The sale of Units in the Dakota Project was a sale of securities as defined by federal securities law.

193.    Defendants made untrue statements of fact, and failed to state material facts, in connection with the Investors' purchase of the Units, as specifically alleged above.

194.    Defendants made their statements and omissions of material fact with scienter intending to mislead Plaintiffs or acting recklessly without regards for the truth of their statements of disclosures.

195.    Plaintiffs relied on Defendants representations in purchasing the Units and have suffered damages as a result of reliance in an amount no less than $2,100,000.00, or other greater amount to be proven at trial.

196.    Defendants used the instrumentalities of interstate commerce to engaged in unlawful acts, practices, and a course of business which operated as a fraud against Plaintiffs as described above in this complaint.

197.    Plaintiffs suffered damages as a result of Defendants' unlawful acts, practices, and course of business in an amount no less than $2,100,000.00, or other greater amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
(Violation of Utah Securities Act, Utah Code Ann. § 61-1-1 et seq.)
(Against all Defendants)

198.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

199.    NEW HARMONY's sale of Units to the Plaintiffs constituted securities under the Utah Securities Act.

200.    In connection with the offer, purchase and sale of the Units, NEW HARMONY employed an ongoing scheme to defraud; made untrue statements of material fact; and engaged in acts, practices and a course of business that operated as fraud upon Plaintiffs.

201.    Defendants' conduct violated all subsections of Utah Code Ann. § 61-1-1.

202.    Defendants' violation of Utah Code Ann. § 61-1-1 was intentional.

203.    Plaintiffs have suffered damages as a result of Defendants violation of Utah Code Ann. § 61-1-1 in an amount no less than $2,100,000.00, or other greater amount to be proven at trial.

204.    In accordance with Utah Code Ann. § 61-1-22, Defendants are jointly and severally liable to Plaintiffs for three times the consideration Plaintiffs paid for the Units, together with interest of 12%, costs and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1.    For actual damages in the amount of not less than $2,100,000.00 plus interest;

2.    For treble damages in the amount of not less than $6,300,000.00 plus interest;

3.    For punitive damages as may be determined;

4.    For an award of attorney's fees and costs as allowed by law; and

5.     For such other and further relief as this Court deems just, equitable, and proper.

//

//

//

//

## <u>JURY DEMAND</u>

Pursuant to Civil Rule 38, Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of his claims in this action.

DATED and SIGNED this 28th day of January, 2016.

**HEIDEMAN & ASSOCIATES.**

*/s/ Justin D. Heideman*
JUSTIN D. HEIDEMAN
*Attorney for Plaintiff*