IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KIRE KRSTEVSKI, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>EDWARD B. WELSH, et al.,<br><br>　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS EDWARD AND STACY WELSH'S MOTION TO DISMISS<br><br><br>Case No. 1:16-CV-15 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants Edward and Stacy Welsh's (collectively, "Defendants") Motion to Dismiss.  Defendants seek to dismiss Plaintiffs' causes of action three through eleven, stay the remaining claims pending arbitration, and dismiss all claims against Stacy Welsh.  For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

## I.  BACKGROUND

The following facts are taken from Plaintiffs' Complaint and are accepted as true for the purposes of this Motion.  Kris Thorkelson holds all rights associated with Canadian Patent #2257773 (the "Patent").  The Patent covers technology that can be used to manufacture prefabricated wall assemblies that can then be shipped directly to a construction site, allowing for rapid and cheap assembly of a commercial or residential building.

Thorkelson was introduced to Edward Welsh while selling licenses to the Patent.  In 2010, Welsh approached Thorkelson to propose the formation of a business that would manufacture construction panels using technology from the Patent.  In 2011, Thorkelson and

Welsh reached an agreement and they formed QB International, Inc. ("QB International"), a Utah corporation.

Thorkelson and Welsh agreed to solicit investors to generate the necessary funds for QB International. To this end, they formed a new company called New Harmony Homes ("New Harmony"). The original business plan for New Harmony was to use the Patent technology to construct housing for oil workers in North Dakota. The Panels were to be manufactured in Utah, then shipped to North Dakota.

Welsh recommended that Defendant Terry Goers be added as a member of New Harmony because of his manufacturing experience. Based on Welsh's recommendation and Terry Goers' experience, Thorkelson agreed. Two other members, Kevin Fleury and Stephen Dredge, were later added as partners to New Harmony.

In 2012, QB International and New Harmony, through its partners, began soliciting investments from foreign investors to fund a housing project in Watford, North Dakota (the "Dakota Project"). Defendants used a broker in Australia named Jason Simpson and a company called Cash Flow Gold, LLC to solicit the Plaintiffs.

QB International and New Harmony proposed that investors, including Plaintiffs, would finance the building of one or more rooms ("Units") of the Dakota Project. Investors paid a purchase price of $47,000 per Unit, to be released to New Harmony in stages.[1] In return, investors would share the rental revenue with New Harmony once the building was complete.

---

[1] Investors were to release 35% of the purchase price from escrow upon completion of the contract ("Stage 1"), 35% when the panels were completed at the factory ("Stage 2"), and the remaining 30% when New Harmony delivered a "rent ready" property to the investor ("Stage 3").

2

In accordance with this agreement, each Plaintiff signed at least one Real Estate Purchase Contract ("REPC") with New Harmony.  After signing the REPCs, each Plaintiff wired their money to a Utah law firm that was acting as an escrow agent.  Plaintiffs' escrow funds were to be used to complete the Dakota Project.

Over the next few years, Plaintiffs became aware of significant problems with the Dakota Project, including substantial construction delays.  New Harmony solicited Plaintiffs to release funds from the escrow accounts with promises that doing so would hasten the completion of the project.  New Harmony assured Plaintiffs that all necessary permits and approvals had been obtained, but this was not the case.

Plaintiffs allege that, instead of using investor funds for their intended purpose, Defendants used the investment money to enrich themselves and their family members and to fund the operation of unrelated side-businesses.  Millions of dollars of investor funds that were supposed to be used for the Dakota Project could not be accounted for, resulting in insufficient capital to properly complete the Dakota Project.  As a result, the Dakota Project was never finished and appears to be abandoned.  Plaintiffs have not received any return on or reimbursement of their investments.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as

the nonmoving party.[2]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[4]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[7]

## III.  DISCUSSION

Plaintiffs bring claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud/misrepresentation, (4) fraudulent non-disclosure, (5) negligent misrepresentation, (6) conversion, (7) civil conspiracy, (8) unjust enrichment, (9) alter ego, (10) federal securities fraud, and (11) state securities fraud.  Defendants seek dismissal of

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

Plaintiffs' securities claims, fraud-based claims, negligent misrepresentation claim, and alter ego claim.[8]  Defendants also seek to compel arbitration on the remaining claims.

A.      FEDERAL SECURITIES FRAUD

Defendants argue that Plaintiffs' federal and state securities claims are barred by the relevant statutes of limitation and, alternatively, are inadequately pleaded.

1.      *Statutes of Limitation*

The statute of limitations is an affirmative defense, and is grounds for dismissal on a motion to dismiss only if the "allegations in the complaint suffice to establish that ground."[9]  The statute of limitations applicable to Plaintiffs' federal claims limits actions to the earlier of two years after "discovery of facts constituting the violation" or five years after the violation occurred.[10]  The statute of limitations under the Utah Uniform Securities Act is similar.[11]  "[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably

---

[8] Defendants assert that they seek dismissal of Plaintiffs' third through eleventh causes of action.  However, Defendants provide no argument in relation to Plaintiffs' conversion, civil conspiracy, or unjust enrichment claims.  Further, as will be discussed, Plaintiffs' civil conspiracy claim is not subject to arbitration.  Therefore, this claim will not be dismissed.

[9] *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Panhandle E. Pipe Line Co. v. Parish*, 168 F.2d 238, 240 (10th Cir. 1948) ("[W]here it affirmatively appears from the face of a complaint that the action pleaded is barred by the statute of limitations, the defense can be raised by motion to dismiss.").

[10] 28 U.S.C. § 1658(b) (2012).

[11] Utah Code Ann. § 61-1-22(7)(a).  Based on the similarities of the statutes, the Court will analyze them together.  Defendants do not argue that a different analysis should be applied and Plaintiffs concede that "the statute of limitations analysis for Plaintiff's [sic] state securities claim is essentially the same as . . . the federal securities statute of limitations . . . ."  Docket No. 59, at 13.

diligent plaintiff would have discovered the facts constituting the violation, including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."[12]

Plaintiffs filed their Complaint on January 28, 2016.[13]  Defendants argue that Plaintiffs should have discovered the facts constituting securities violations no later than December 13, 2013, when a state court case was filed by Thorkelson and Fleury against Defendants and others.[14]  In addition, Defendants argue that two local news reports regarding the state court litigation, a Facebook page, and criminal charges brought against Thorkelson triggered the limitations period prior to January 28, 2014.[15]  Plaintiffs counter that they did not discover, and that a reasonably diligent plaintiff would not have discovered, those documents.  In addition, Plaintiffs argue that those documents lack facts indicating the necessary scienter for securities fraud claims.

The bulk of the parties' arguments reflect a misunderstanding of the 12(b)(6) standard. The Court must confine its inquiry to the allegations in the Complaint, and will not dismiss Plaintiffs' claims unless the allegations within the Complaint "show that relief is barred by the applicable statute of limitations."[16]  The Court therefore declines Defendants' invitation to take judicial notice of the media reports, the Facebook page, or the criminal charges against

---

[12] *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 652 (2010) (internal quotation marks omitted).

[13] Docket No. 2, at 32.

[14] Docket No. 54, at 8.

[15] *Id.* at 9.

[16] *Jones*, 549 U.S. at 215.

Defendant Thorkelson and will not consider them at this time.[17]  The Court will, however,

consider the state court complaint filed on December 13, 2013 because Plaintiffs chose to

include the details of that lawsuit in their Complaint.[18]

Defendants argue that the state court complaint put Plaintiffs on "actual notice" of their

securities fraud claims.[19]  The Court disagrees.  That complaint depicted a failed business

venture and alleged that some Defendants siphoned off project funds, but did not allege

securities fraud.   Its allegations do not include facts showing that Defendants made

misrepresentations with an intent to deceive.[20]  Notably, plaintiffs in the state court litigation

added securities fraud claims months later, on or about June 10, 2014.[21]  The Court therefore

concludes that the state court complaint did not provide Plaintiffs with sufficient facts to trigger

the two-year statute of limitations prior to January 28, 2014.

The Court is satisfied that a statute of limitations bar does not affirmatively appear from

the face of Plaintiffs' Complaint.  Whether a diligent Plaintiff should have discovered sufficient

facts from other sources prior to January 28, 2014 is a factual dispute that the Court need not

---

[17] *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."); *see also Anderson Living Tr. v. WPX Energy Prod., LLC*, 27 F. Supp. 3d 1188, 1235 (D.N.M. 2014) (stating that while parties may have genuine factual disputes regarding the statute of limitations defense, "a rule 12(b)(6) motion is not the place to decide them").

[18] *See* Docket No. 2 ¶ 98.

[19] Docket No. 54, at 8.

[20] *See Merck & Co*, 559 U.S. at 648–49 ("A plaintiff cannot recover without proving that a defendant made a material misstatement with an intent to deceive—not merely innocently or negligently.").

[21] Docket No. 2 ¶ 99.

resolve on this Motion.  The Court therefore denies Defendant's Motion to Dismiss Plaintiffs' state and federal securities fraud claims on statute of limitations grounds.

     2.    *Failure to State a Claim*

        a.    *The Private Securities Litigation Reform Act Pleading Standard*

To state a claim under § 10(b) of the Securities Exchange Act and Rule 10b-5 of the Securities and Exchange Commission, a plaintiff must plausibly allege that a defendant made statements that: (1) contained false or misleading statements of material fact; (2) related to the purchase or sale of a security; (3) were made with intent to defraud investors or with a conscious disregard of a risk that shareholders would be misled; (4) led to reliance by the plaintiff; and (5) caused the plaintiff's loss.[22]

The Private Securities Litigation Reform Act of 1995 ("PSLRA")[23] heightened pleading standards for both the falsity and scienter elements of federal securities fraud claims.  "On the first element (falsity), a plaintiff must plead the fraud with particularity."[24]  This means that a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[25]  On the third element (scienter), "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a

---

[22] *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146–47 (10th Cir. 2015).

[23] Pub. L. No. 104-67, 109 Stat. 737 (1995).

[24] *Nakkhumpun*, 782 F.3d at 1147 (citing Fed. R. Civ. P. 9(b)).

[25] 15 U.S.C. § 78u-4(b)(1)(B) (2012).

strong inference that the defendant acted with the required state of mind."[26]  A strong inference

of scienter has been described as "a conclusion logically based upon particular facts that would

convince a reasonable person that the defendant knew a statement was false or misleading."[27]

The purpose of the PSLRA is to "erect barriers to frivolous strike suits, but not to make

meritorious claims impossible to bring."[28]  The Court applies "a common-sense, case-by-case

approach in determining whether a plaintiff has alleged securities fraud with the particularity

required by § 78u-4(b)(1)."[29]

> b.  *Plaintiffs' allegations*

The Court finds that Plaintiffs failed to specify each statement alleged to be misleading,

and failed to plead the fraud with particularity.  Only with some difficulty has the Court sifted

through the Complaint to compile a list of allegedly misleading statements and facts supporting

them.[30]

First, Plaintiffs allege that "New Harmony assured Plaintiffs all necessary permits had

been obtained, and that nothing was standing in the way of the Dakota Project."[31]  Plaintiffs go

---

[26] 15 U.S.C. § 78u-4(b)(2).

[27] *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1105 (10th Cir. 2003).

[28] *Id.* at 1100.

[29] *Id.* at 1102.

[30] The tenth cause of action simply states that Defendants made untrue statements "as specifically alleged above," without identifying any particular statement.  Docket No. 2 ¶ 193.

[31] Docket No. 2 ¶ 72.

on to claim that the project was never cleared,[32] and that "New Harmony agents consistently refused to seek appropriate permits and inspections to lawfully construct the Dakota Project."[33]

Second, "QB International and/or New Harmony represented to Plaintiffs that the Dakota Project investment funds would be used to construct the Dakota Project."[34] Plaintiffs allege that these statements were made sometime after June 2012, and that New Harmony partners Thorkelson and Fleury later testified in other court proceedings that they knew as early as June 2012 that millions of dollars of investor funds that were supposed to be used on the project could not be accounted for.[35] Plaintiffs allege that New Harmony subsequently failed to disclose this information to investors.[36] Plaintiffs make many allegations describing how Mr. Welsh and New Harmony misused funds dedicated to the project.[37]

Third, "QB International and/or New Harmony represented to Plaintiffs that the Dakota Project would have a completion date of July 1, 2013."[38] The facts alleged in support of the third statement are the same as those supporting the second statement.

Fourth, "New Harmony represented to Plaintiffs that the Dakota Project would yield rental incomes and [] property interests."[39] Facts in support include those mentioned above. In addition, Plaintiffs allege that they have never received a return on their investment and that the

---

[32] *Id.* ¶¶ 72, 131.

[33] *Id.* ¶ 75.

[34] *Id.* ¶ 122.

[35] *Id.* ¶¶ 78, 127.

[36] *Id.* ¶ 80.

[37] *Id.* ¶¶ 82–84.

[38] *Id.* ¶ 123.

[39] *Id.* ¶ 124.

real property in which they were promised an interest has been transferred or sold by New Harmony to another company.[40]

Fifth, New Harmony represented "that with the release of further funds from escrow, the project would be completed when in fact the project was not completely cleared to be completed."[41]  Plaintiffs allege that New Harmony partners made untrue statements about the progress of the project with the intent of convincing investors to release funds prematurely.[42]  Plaintiffs also allege that New Harmony partners threatened to bring breach of contract suits against investors who refused to release funds.[43]

        c.    *Plaintiffs' allegations do not satisfy the PSLRA pleading standard*

After a careful and holistic review of the Complaint, the Court finds that Plaintiffs' allegations do not satisfy the heightened pleading standard.  Applying the considerations set out in *Adams v. Kinder-Morgan, Inc.*,[44] the Court finds the allegations deficient primarily because the allegedly fraudulent statements are presented as generic paraphrases, and because Plaintiffs

---

[40] *Id.* ¶ 96.

[41] *Id.* ¶ 131.

[42] *Id.* ¶ 92.

[43] *Id.* ¶ 93.

[44] 340 F.3d 1083 (10th Cir. 2003).  These considerations include:

(1) the level of detail provided by the facts stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when considered together; (4) whether the source of the plaintiff's knowledge about a stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading.

*Id.* at 1099.

do not identify which Defendant made each statement or to whom.  In addition, it is not clear when each statement was made.

Further considerations support the Court's conclusion.  Some supporting facts appear to be inconsistent.  For example, Plaintiffs stress that necessary permits were never obtained and that the Dakota Project was never cleared, but later allege that the construction quality was poor.  Finally, Plaintiffs do not disclose either personal or documentary sources for any facts.

The Court acknowledges that it is not always necessary that a plaintiff include dates, divulge sources, or state how he or she acquired information in stating a securities fraud claim.  However, the Court believes that in this case, Plaintiffs could have significantly strengthened their pleading by including these details.  The Tenth Circuit has explained:

> In pleading the misleading nature of a defendant's statements, the support provided by source information will often be helpful in distinguishing whether a particular allegation is mere rumor and speculation or whether it is based on concrete information from relevant documents or people who were in a position to know the truth of the allegations . . . .
>
> [W]here a plaintiff does not identify the sources of the facts stated in the complaint, the facts alleged in an information and belief complaint will usually have to be particularly detailed, numerous, plausible, or objectively verifiable by the defendant before they will support a reasonable belief that the defendant's statements were false or misleading.[45]

In sum, the statements and facts alleged lack the specificity required by the heightened pleading standard.  The Court must therefore dismiss Plaintiffs' federal securities fraud claim pursuant to 15 U.S.C. § 78u-4(b)(3).

B.      STATE SECURITIES FRAUD, COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION

---

[45] *Id.* at 1102–03.

Plaintiffs' state securities fraud claim, as well as Plaintiffs' fraud/misrepresentation and fraudulent non-disclosure claims are all subject to Federal Rule of Civil Procedure 9(b).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[46]

Plaintiffs' Complaint falls well short of what Rule 9(b) requires.  Plaintiffs make general allegations about statements allegedly made by "New Harmony" or "Defendants" to "Plaintiffs." However, Plaintiffs fail to adequately state who made the statements, what those statements were, when and where they were made, and who heard them.  Plaintiffs' claim for negligent misrepresentation suffers from the same defects and these claims must be dismissed.

C.      ALTER EGO

Defendants argue that Plaintiffs' alter ego cause of action is inadequately pleaded.  "An alter ego claim 'is not itself a claim for substantive relief . . ., but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.'"[47]  "The alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation."[48]  Utah employs a two-

---

[46] *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (quotation marks and citation omitted).

[47] *Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968, 971 (quoting *Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*, 120 Cal. Rptr. 3d 303, 310 (Cal. Ct. App. 2011)).

[48] *Jones & Trevor Mktg. v. Lowry*, 2012 UT 39, ¶ 13, 284 P.3d 630, 635.

prong test to determine whether a party may pierce the corporate veil.[49]  First, "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals."[50]  This prong has been called the "formalities requirement."[51]  Second, "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow."[52]  This prong has been called the "fairness requirement."  The Utah Supreme Court has adopted eight non-exclusive considerations or guidelines to aid in determining whether the alter ego test has been met.[53]  These are:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.[54]

Relevant to the first consideration, Plaintiffs allege that the diversion of investors' funds to unrelated entities made New Harmony unable to complete its expected obligations, including the construction of the Dakota Project.[55]  Plaintiffs allege that undercapitalization was due in part to the fact that several million dollars went "unaccounted for" shortly after they were released

---

[49] *Id.* ¶ 14.

[50] *Id.* (quotation marks omitted).

[51] *Id.*

[52] *Id.* (quotation marks omitted).

[53] *Id.* ¶¶ 16–17.

[54] *Id.* ¶ 16 (quotation marks omitted).

[55] Docket No. 2 ¶ 185.

from escrow.[56]  Defendants argue that allegations of undercapitalization are misplaced because New Harmony is not a "one-man corporation."  However, the *Norman* test asks whether a corporation "is the alter ego of one *or a few individuals*."[57]  The rationale behind the consideration of undercapitalization is that the deliberate creation of an entity with inadequate capital to meet expected liabilities may signal an abuse of the corporate form.  The Court believes that the policy reasons for this consideration apply equally whether the entity is made up of one person or several.

Relevant to the second consideration, Plaintiffs allege that a proper shareholder or director's meeting has never been called.[58]  Relevant to the third consideration, Plaintiffs allege that no dividends have been paid.[59]  Relevant to the fourth and seventh considerations, Plaintiffs allege that Mr. Welsh and other New Harmony partners siphoned off funds to create a trucking company, fund multiple unrelated business ventures, make unnecessary personal purchases, and allow Mr. Welsh to travel the world on unrelated business trips, among other things.[60]  In addition, Plaintiffs allege that Mr. Welsh used investors' money to cure foreclosure on his home and pay down a mortgage valued at $800,000.[61]

---

[56] *Id.* ¶ 187.

[57] *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 14, 284 P.3d 630, 635 (emphasis added) (quotation marks omitted).

[58] Docket No. 2 ¶ 186.

[59] *Id.*

[60] *Id.* ¶¶ 81–86.

[61] *Id.* ¶ 69.

The Court concludes that the Plaintiff has alleged facts related to most or all of the alter-ego considerations, and that the allegations are adequate to state a claim.  Therefore, the alter ego claim will be allowed to proceed.

D.      CLAIMS AGAINST STACY WELSH

Defendants also seek the dismissal of all claims against Stacy Welsh.  Plaintiffs do not respond to this portion of Defendants' Motion to Dismiss.

There is only one allegation in Plaintiffs' Complaint that relates to Mrs. Welsh.  Plaintiffs allege that Edward "Welsh wrote several checks to himself and Stacy Welsh, Welsh's wife, for no apparent reason other than to enrich Stacy Welsh and himself."[62]  This allegation is insufficient to state a claim against Mrs. Welsh and all claims against her will be dismissed.

D.      REMAINING CLAIMS

Defendants seek to compel arbitration as to Plaintiffs' first, second, sixth, seventh, eight, and ninth causes of action.  The Court agrees that Plaintiffs' first, second, sixth, and eighth causes of action are subject to arbitration under the Real Estate Purchase Contracts ("REPC").  The third, fourth, fifth, tenth, and eleventh claims are not.

The Federal Arbitration Act[63] allows a party aggrieved by the failure of another to arbitrate under a written agreement to petition any district court which, "save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[64]  If the Court is "satisfied that the issue involved . . . is referable to arbitration under such an agreement," the Court "shall on application of one of the

---

[62] *Id.* ¶ 68.

[63] 9 U.S.C. §§ 1–14 (2012).

[64] *Id.* § 4.

parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[65]  The Court's role under the Federal Arbitration Act is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.[66]

There appears to be no dispute that the REPCs signed by Plaintiffs included a valid arbitration agreement.  Therefore, the Court must consider which of Plaintiffs' claims are subject to that agreement.

When determining arbitrability, if the scope of arbitrability is unclear, the Court should apply a presumption in favor of arbitrability.[67]  The Tenth Circuit has held that the strength of the presumption favoring arbitration depends on whether an arbitration clause is "broad" or "narrow."[68]  "To determine the breadth of an arbitration clause the Court asks if 'the parties clearly manifested an intent to narrowly limit arbitration to specific disputes' that might arise between them."[69]

"Where the arbitration clause is broad, there arises a presumption of arbitrability and

---

[65] *Id.* § 3.

[66] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is well settled in both commercial and labor cases that whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination.  It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." (alteration in original) (citations and internal quotation marks omitted)).

[67] *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) ("The Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements.  Under this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (internal citations and quotation marks omitted)).

[68] *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) (Gorsuch, J., concurring).

[69] *Id.* at 1196 (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005)).

arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."[70]  On the other hand, "[u]nder a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview."[71]

The REPCs contain the following arbitration agreement:

> Default and Arbitration: Should Buyer elect not to fulfill Buyer's obligations under this Agreement, all earnest monies will be retained by the Seller as liquidated damages and fun[d] settlement of any claim, whereupon Buyer and Seller will be relieved of all obligation under this Agreement.  If Seller defaults under this agreement, arbitration is the only remedy that the buyer has for litigation, both parties herby agree to arbitration for any default of contract by either party.  And all cost for counsel is not redeemable from either party.  If Buyer chooses to withdraw from contract then seller will do all they can to return funds to buyer less any cost associated from the sale that has been accrued.

Defendants incorrectly argue that the "REPC has a provision requiring disputes arising under or related to the REPC to be arbitrated."[72]  The Court does not read the provision that broadly.  Instead, the parties only agreed to "arbitration for any *default of contract* by either party."  Thus, the parties "clearly manifested an intent to narrowly limit arbitration to specific disputes."[73]  Specifically, the parties only agreed to arbitrate default of contract by either party. The Court considers this clause to be narrow in scope.

---

[70] *Cummings*, 404 F.3d at 1261 (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks omitted)).

[71] *Id.* at 1262 (citing *Louis Dreyfus Negoce*, 252 F.3d at 224).

[72] Docket No. 54, at 19.

[73] *Cummings*, 404 F.3d at 1262.

As stated, "[u]nder a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause."[74] "A dispute is not subject to arbitration if it involves matters that are 'collateral' to those covered by the clause."[75] Nevertheless, narrow clauses must still be interpreted under the policy favoring arbitration agreements and doubts concerning the scope or arbitrable issues are resolved in favor of arbitration.[76]

"In order to determine whether a claim is arbitrable under the FAA, we evaluate the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains."[77] "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them."[78] "Focusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause."[79]

Plaintiffs' claims can be divided into the following categories: (1) Defendants failed to complete the Dakota Project; (2) Defendants made false and fraudulent representations; (3) Defendants failed to disclose material information; and (4) Defendants wrongfully used investor funds. Only claims related to the first and fourth categories fall within the bounds of the arbitration clause.

---

[74] *Id.*

[75] *Chelsea Family Pharmacy*, 567 F.3d at 1197.

[76] *Id.*

[77] *Id.*

[78] *Id.* at 1198 (quotation marks omitted) (alteration in original).

[79] *Id.* at 1198.

Under the REPCs, Plaintiffs were required to pay a certain sum of money.  That money was to be used to complete the Dakota Project and, in return for their investment, Plaintiffs would receive an interest in that property.  Through the alleged wrongful use of investor funds, Defendants failed to complete the Dakota Project and thereby defaulted on the promise to deliver the property interest contemplated by the REPCs.  Plaintiffs' breach of contract, breach of the implied covenant of good faith, conversion, and unjust enrichment claims (Plaintiffs' first, second, sixth, and eighth causes of action) all revolve around these facts and, consistent with the policy favoring arbitration, are within the arbitration clause.

Having determined that certain of Plaintiffs' claims are subject to arbitration, the Court must decide whether to stay this matter as requested by Defendants.  "Stay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim or when 'the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit.'"[80]  "[T]he mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case."[81]  Here, there is no reason to stay the case while certain claims are arbitrated.  While related, the claims subject to arbitration do not predominate and may not have a preclusive effect on the other claims.  Additionally, no other served Defendants have sought to compel arbitration.  Therefore, the Court will not stay this matter pending arbitration.

E.      AMENDMENT

---

[80] *Id.* at 1200 (quoting *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998)).

[81] *Riley Mfg.*, 157 F.3d at 785.

Plaintiffs have not formally filed a motion to amend.  However, in the conclusion to their Response, Plaintiffs briefly request leave to amend if the Court finds any of their claims to be deficient.  "Although the 'failure to file a formal motion is not always fatal, a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it.'"[82]  "[A] brief request, made in opposition to a motion to dismiss, that neither describes nor gives grounds for amendment does not satisfy this standard."[83]  The Court declines to consider Plaintiffs' request as a motion for leave to amend.  Should Plaintiffs seek amendment, they must file a properly supported motion.

### IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 54) is GRANTED IN PART AND DENIED IN PART.

DATED this 29th day of August, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[82] *Koyle v. Wells Fargo Bank Minn.*, 470 F. App'x 712, 713 (10th Cir. 2012) (unpublished) (quoting *Calderon v. Kan. Dep't of Soc. and Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

[83] *Id.*