IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KIRE KRSTEVSKI, et al.,<br><br>           Plaintiffs,<br><br>v.<br><br>EDWARD B. WELSH, et al.,<br><br>           Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT TERRY GOER'S MOTION TO DISMISS<br><br><br>Case No. 1:16-CV-15 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Terry Goer's Motion to Dismiss. For the reasons discussed below, the Court will deny the Motion.

## I.  BACKGROUND

The following facts are taken from Plaintiffs' Complaint and are accepted as true for the purposes of this Motion. Kris Thorkelson holds all rights associated with Canadian Patent #2257773 (the "Patent"). The Patent covers technology that can be used to manufacture prefabricated wall assemblies that can then be shipped directly to a construction site, allowing for rapid and cheap assembly of a commercial or residential building.

Thorkelson was introduced to Edward Welsh while selling licenses to the Patent. In 2010, Welsh approached Thorkelson to propose the formation of a business that would manufacture construction panels using technology from the Patent. In 2011, Thorkelson and Welsh reached an agreement and they formed QB International, Inc. ("QB International"), a Utah corporation.

1

Thorkelson and Welsh agreed to solicit investors to generate the necessary funds for QB International. To this end, they formed a new company called New Harmony Homes ("New Harmony"). The original business plan for New Harmony was to use the Patent technology to construct housing for oil workers in North Dakota. The Panels were to be manufactured in Utah, then shipped to North Dakota.

Welsh recommended that Defendant Terry Goers be added as a member of New Harmony because of his manufacturing experience. Based on Welsh's recommendation and Goers' experience, Thorkelson agreed. Two other members, Kevin Fleury and Stephen Dredge, were later added as partners to New Harmony.

In 2012, QB International and New Harmony, through its partners, began soliciting investments from foreign investors to fund a housing project in Watford, North Dakota (the "Dakota Project"). Defendants used a broker in Australia named Jason Simpson and a company called Cash Flow Gold, LLC to solicit the Plaintiffs.

QB International and New Harmony proposed that investors, including Plaintiffs, would finance the building of one or more rooms ("Units") of the Dakota Project. Investors paid a purchase price of $47,000 per Unit, to be released to New Harmony in stages.[1] In return, investors would share the rental revenue with New Harmony once the building was complete.

In accordance with this agreement, each Plaintiff signed at least one Real Estate Purchase Contract ("REPC") with New Harmony. After signing the REPCs, each Plaintiff wired their

---

[1] Investors were to release 35% of the purchase price from escrow upon completion of the contract ("Stage 1"), 35% when the panels were completed at the factory ("Stage 2"), and the remaining 30% when New Harmony delivered a "rent ready" property to the investor ("Stage 3").

money to a Utah law firm that was acting as an escrow agent. Plaintiffs' escrow funds were to be used to complete the Dakota Project.

Over the next few years, Plaintiffs became aware of significant problems with the Dakota Project, including substantial construction delays. New Harmony solicited Plaintiffs to release funds from the escrow accounts with promises that doing so would hasten the completion of the project. New Harmony assured Plaintiffs that all necessary permits and approvals had been obtained, but this was not the case.

Plaintiffs allege that, instead of using investor funds for their intended purpose, Defendants used the investment money to enrich themselves and their family members and to fund the operation of unrelated side-businesses. Millions of dollars of investor funds that were supposed to be used for the Dakota Project could not be accounted for, resulting in insufficient capital to properly complete the Dakota Project. As a result, the Dakota Project was never finished and appears to be abandoned. Plaintiffs have not received any return on or reimbursement of their investments.

## II.  STANDARD OF REVIEW

Under Rule 12 of the Federal Rules of Civil Procedure, a party can move to have a claim dismissed for "failure to state a claim upon which relief can be granted."[2] Since Defendant has filed an Answer, the Court considers his Motion under Rule 12(c). The Court applies the same standards in evaluating motions under Rule 12(b)(6) and Rule 12(c).[3]

---

[2] Fed. R. Civ. P. 12(h)(2)(B).

[3] *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[4]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[5] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[6]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[7]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[8]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[9]

---

[4] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[8] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[9] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

III. DISCUSSION

Plaintiffs bring claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud/misrepresentation, (4) fraudulent non-disclosure, (5) negligent misrepresentation, (6) conversion, (7) civil conspiracy, (8) unjust enrichment, (9) alter ego, (10) federal securities fraud, and (11) state securities fraud. Defendant Terry Goers seeks dismissal of all but Plaintiffs' claim for unjust enrichment.

A.  PARTNERSHIP

Defendant argues that many of Plaintiffs' claims fail because there are not sufficient allegations that he was a partner of New Harmony. On this basis, Defendant seeks dismissal of Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud/misrepresentation, fraudulent non-disclosure, negligent misrepresentation, alter ego, and securities fraud.

The Utah Uniform Partnership Act defines partnership as "an association of two or more persons to carry on as co-owners a business for profit."[10] "[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."[11]

Plaintiffs allege that New Harmony is a partnership formed by Kris Throkelson, Edward Welsh, Terry Goers, Kevin Fleury, and T.J. Goers. New Harmony was initially established by QB International, Welsh, and Thorkelson as a way to solicit investors for QB International. Terry Goers was added as a member to New Harmony based on a recommendation from Edward

---

[10] Utah Code Ann. § 48-1d-102(12) (West 2016).

[11] *Id.* § 48-1d-202(1).

Welsh due to Terry Goers' apparent manufacturing experience. Terry Goers acted as a member of New Harmony, but his ownership interest in New Harmony was held by his son, T.J. Goers.

These allegations, though limited, are sufficient to plausibly state that Defendant was a partner in New Harmony. Plaintiffs have alleged that Defendant, along with others, associated to carry on as co-owners of a business for profit. Specifically, Defendant joined in New Harmony, which was used to solicit investments.

Defendant makes much of the fact that Plaintiffs allege that his "ownership interest" was held by his son. Plaintiffs' use of the phrase "ownership interest" is somewhat confusing. However, it appears that Plaintiffs are alleging that Defendant's son held the right to receive Defendant's distributions from the partnership. The Utah Uniform Partnership Act allows a partner to transfer his right to receive distributions from the partnership.[12] Doing so does not, by itself, cause a person's dissociation with the partnership.[13] Further, if a partner transfers his right to receive distributions, the partner generally retains all duties and obligations of a partner.[14] Thus, even if Defendant transferred his transferable interest to his son, that does not, by itself, preclude a determination that Defendant was a partner in New Harmony. Therefore, the Court will deny Defendant's Motion to Dismiss on this ground.[15]

---

[12] *Id.* § 48-1d-603(1)(a).

[13] *Id.* § 48-1d-603(1)(b).

[14] *Id.* § 48-1d-603(6).

[15] Defendant relies exclusively on the argument regarding partnership in challenging the breach of contract, breach of implied covenant of good faith and fair dealing, fraud/misrepresentation, fraudulent non-disclosure, negligent misrepresentation, and securities fraud claims. There may be other grounds to dismiss these claims, as set forth in the Motion to Dismiss filed by Edward and Stacy Welsh. Docket No. 54. However, Defendant has not raised these grounds and they will not be addressed by the Court in this Order.

B.   ALTER EGO

Defendant does not argue that Plaintiffs' alter ego claim is inadequately pleaded. Instead, Defendant argues without citation that the alter ego claim should be dismissed because alter ego is not a cause of action. Under Utah law, "[a]n alter ego claim 'is not itself a claim for substantive relief . . . , but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.'"[16]

Interpreting Utah law, the Northern District of Indiana reasoned that a plaintiff "may properly plead an alter ego theory if evidence is put forth establishing an independent basis to hold the corporate entity liable."[17] The Court agrees with this reasoning and concludes that Plaintiffs' alter ego claim should not be dismissed in light of other substantive causes of action asserted in Plaintiffs' Complaint.

C.   CONVERSION

Defendant next argues that Plaintiffs fail to state a claim for conversion. "Conversion is an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession."[18]

Defendant argues that Plaintiffs' conversion claim is insufficient because it merely restates the legal standard for a conversion claim.[19] Defendant is correct that this single

---

[16] *Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968, 971 (quoting *Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*, 120 Cal. Rptr. 3d 303, 310 (Cal. Ct. App. 2011)).

[17] *Ello v. Brinton*, No. 2:14-CV-299-TLS, 2015 U.S. Dist. LEXIS 63036, at *8 (N.D. Ind. May 13, 2015) (unpublished) (citing *Bushnell*, 2012 UT ¶ 13 n.2).

[18] *Bennett v. Huish*, 2007 UT App 19, ¶ 31, 155 P.3d 917, 928.

[19] Docket No. 2 ¶ 165 ("All Defendants exercised wrongful dominion over Plaintiffs' funds in a manner inconsistent with and in defiance of Plaintiffs' rights in the property.").

paragraph in the Complaint would not be sufficient to state a claim for conversion. However, Defendant ignores the remaining allegations in the Complaint, which are incorporated into Plaintiffs' conversion claim. When considering the Complaint as a whole, as the Court must, Plaintiffs have presented sufficient allegations to support a plausible claim for conversion.

D.  CIVIL CONSPIRACY

Finally, Defendant asserts that Plaintiffs fail to state a claim for civil conspiracy. A claim of civil conspiracy requires proof of the following: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.[20]

Defendant appears to argue that Plaintiffs have failed to adequately allege one or more unlawful, overt acts. Defendant argues that Plaintiffs have failed to state a claim against him for fraud, fraudulent misrepresentation, or fraudulent omission. However, this argument appears to rest on Defendant's argument regarding his membership in the partnership, which has been rejected. Defendant also argues that Plaintiffs have failed to state a claim against him for conversion. This argument too has been rejected. Having carefully reviewed all of the allegations in the Complaint, the Court concludes that Plaintiffs have adequately stated a claim for civil conspiracy against Defendant.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant Terry Goer's Motion to Dismiss (Docket No. 46) is DENIED.

DATED this 29th day of August, 2016.

---

[20] *Peterson v. Delta Air Lines, Inc.*, 2002 UT App 56, ¶ 12, 42 P.3d 1253, 1257.

BY THE COURT:

_____
Ted Stewart
United States District Judge